CONERY, J.,
concurs in part and dissents in part.
_JjI agree with the majority’s ultimate holding that the testimony of Dr. Bain should have been excluded. I would exclude his testimony based on a finding that the defendants have not established that there is an accepted field of expertise in “causation analysis.” While Dr. Bain may have been qualified as an expert in “biome-chanics” and “accident reconstruction,” the record before us does not support that he performed any tests, examined the specific vehicles, or performed or reviewed any “crash tests” specific to this case. I agree that Dr. Bain’s opinion should have been excluded on that basis.
I disagree with the majority’s analysis that the exclusion of Dr. Bain’s testimony required a de novo review of the jury verdict. I do not find that “the improperly admitted evidence prevented the jury from making a fair and impartial determination of a disputed fact.” See Brewer v. J.B. Hunt Transport, Inc., 09-1408 (La.3/16/10), 35 So.3d 230.
The major thrust of Dr. Bain’s testimony was that the impact was so slight that it could not have caused injury to Mr. God-ehaux’s lumbar spine. The dash cam video on Mr. Godehaux’s vehicle was reviewed by the jury, thus enabling the jury to see the relatively minor nature of this “collision.” Evidence as to minimal |?property damage further supports the conclusion that this was a minor impact collision. The jury heard medical evidence that the collision aggravated a pre-existing back condition. The jury award reflects that the jury discredited Dr. Bain’s testimony, as the jury did award all the past medical expenses totaling $236,150.00 for the plaintiffs lumbar surgery and treatment. The jury also awarded $100,000.00 in future medical expenses, $82,665.00 in past lost wages, $100,000.00 in pain and suffering, and $3,000.00 in loss of consortium to Mrs. Godchaux, for a total amount of $521,830.00 in damages. The jury award, in my view, was quite generous for aggravation of a pre-existing back condition from a minor impact collision, especially where the record demonstrates credibility problems with the plaintiffs testimony.
There was ample evidence in the record that plaintiff had failed to report a long history of prior back complaints to his medical providers. The dash cam video shows no significant displacement of Mr. Godehaux’s vehicle. Mr. Godchaux was easily able to pull to the side of the road without further incident.
Mr. Godehaux’s trial testimony that he ducked and bent his torso to the right was impeached by his deposition testimony that he blacked out and couldn’t remember what happened to him. He first reported to his doctors that he was “in a head on collision,” implying a far more serious event than that “caught on tape.”
At trial, Mr. Godchaux claimed that his primary injury was to his lumbar spine, yet he did not complain of low back pain when he visited the emergency room or to various physicians he consulted during the two week period following the accident.
Dr. Brennan was first consulted for complaints of low back pain on December 20, 2010, nearly one month after the accident. Mr. Godchaux did not [¡¡inform Dr. Brennan of his long history of low back complaints.
At trial, the jury heard evidence and testimony that Mr. Godchaux suffered from low back pain for many years and had documented complaints of low back pain as late as two weeks before the accident in 2010. He was treated for low back pain in 2008, and in 2009, he was treated for low back pain that radiated into his right leg, the same complaints he gave to *829 Dr. Brennan. Most importantly, as to credibility, the jury heard testimony that Mr. Godchaux failed to disclose these prior back problems to his medical providers. Dr. Brennan performed surgery on Mr. Godchaux only after Mr. Godchaux claimed that he fell when his leg gave out on January 3, 2011.
The majority’s decision to substitute its judgment for that of the jury and award money for specific elements of damages that the jury refused to award, increase specific damage awards and affirm other specific awards made by the jury clearly exemplifies why courts of appeal should not attempt to micromanage jury verdicts. The jury heard all the evidence, and, based on the record, could just as easily have found that Mr. Godchaux’s pre-exist-ing low back injury was not aggravated to the extent that the accident caused his surgical treatment or loss of earnings and other damages. Instead, it awarded all of his past medical expenses, $100,000.00 for future medical expenses, $100,000.00 in general damages, all of his past loss of earnings, as well as $3,000.00 for Mrs. Godchaux’s loss of consortium. The majority increased the damages by $259,833.00 for a total damage award of $781,663.00.
In light of the minor nature of this collision and the impeachment of Mr. God-chaux before the jury, I find that the jury’s award, though generous, is not an abuse of its vast discretion. Damage awards are factual findings by a jury. Under |4the facts and circumstances of this case, great deference must be given to the jury’s factual findings. See Guillory v. Saucier, 11-745 (La.App. 3 Cir. 12/7/11), 79 So.3d 1188, writ denied, 12-75 (La.3/9/12), 84 So.3d 554, and writ denied, 12-81 (La.3/9/12), 84 So.3d 555. I would affirm the jury’s award in its entirety.